UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JONATHAN WATERS,

                Plaintiff,

    v.

CHRISTOPHER MITCHELL, et al.,

                Defendants.

CASE NO. C21-0087JLR

ORDER

## I.   INTRODUCTION

Before the court is Plaintiff Jonathan Waters's motion for entry of default judgment against Defendants Christopher Mitchell and Jane Doe Mitchell (collectively, "the Mitchells") pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55(b)(2). (Mot. (Dkt. # 6); Mot. Errata (Dkt. # 10); Waters Decl. (Dkt. # 7); Luhrs Decl. (Dkt. # 8).) The court has considered the motion, the declarations filed in support of the motion, the balance of the record, and the applicable law. Being fully advised, the court
//

1   DENIES Mr. Waters's motion without prejudice and GRANTS Mr. Waters leave to file

2   an amended complaint.

3                          **II.     BACKGROUND**

4          Mr. Waters initiated this action against the Mitchells on January 25, 2021.  (*See*

5   *generally* (Compl. (Dkt. # 1) ¶ 1.)  The Mitchells allegedly "owned and/or operated" the

6   F/V KULEANA (the "Vessel") and hired Mr. Waters to work as a seaman aboard the

7   Vessel in 2018.  (*Id.* ¶¶ 2-3.)  On approximately June 28, 2018, Mr. Waters was "injured

8   while performing crew work" on the Vessel.[1]  (*Id.* ¶ 4.)  He alleges that his injuries were

9   caused by the Mitchells's negligence and the unseaworthiness of the Vessel.  (*Id.* ¶ 5.)

10  Mr. Waters brings claims for:  (1) unpaid wages for crew work performed from June 17,

11  2018 to July 4, 2018; (2) a double wage penalty for willfully withheld wages pursuant to

12  RCW 49.52.070; (3) negligence under the Jones Act, 46 USC § 30104;

13  (4) unseaworthiness under general maritime law[2]; (5) maintenance, cure, and unearned

14  wages under general maritime law; and (6) punitive damages for callous and willful

15  non-payment of maintenance and cure under general maritime law.  (*See id.* ¶¶ 4-13.)

16         Although Mr. Waters timely served the Mitchells on February 1, 2021, they failed

17  to respond to the complaint or appear in this action.  (*See generally* Cert. of Service (Dkt.

18

19        [1] While Mr. Waters provides more information regarding, among other things, his
20  employment, how he was injured, and the type of injury in his declaration, the court does not
    repeat that information in this section because it cannot rely on that information in evaluating the
21  sufficiency of Mr. Waters's complaint.  *See infra* Section III.B.

22        [2] Although Mr. Waters combines the two theories of negligence and unseaworthiness as
    one cause of action in his complaint (Compl. ¶¶ 4-7), the court will evaluate them separately.

1  # 4); Dkt.)  On April 16, 2021, the court granted Mr. Waters's motion for default and

2  entered an order of default against the Mitchells.  (4/16/21 Order (Dkt. # 5); Mot. for

3  Default (Dkt. # 3).)  Mr. Walters now asks the court to enter a default judgment in the

4  amount of $207,474, itemized as follows:

| | |
|---|---|
| Unpaid Wages | $14,123 |
| Double Wage Penalty | $28,246 |
| Unearned Wages | $14,123 |
| Cure | $2,612 |
| Maintenance | $7,720 |
| Pain, Suffering, and Loss of Enjoyment | $30,000 |
| Punitive Damages | $48,910 |
| Lost Earnings to Date | $45,396 |
| Future Lost Earnings | $11,094 |
| Attorney's Fees[3] | $5,250 |

(Mot. at 3, 6-7; Mot. Errata at 1.)

### III.   ANALYSIS

The court begins by discussing the relevant legal standard governing motions for

default judgment before discussing the merits of Mr. Waters's motion.

### A.   Legal Standard

Entry of default judgment is left to the court's sound discretion.  *Aldabe v. Aldabe*,

616 F.2d 1089, 1092 (9th Cir. 1980).  Because granting or denying relief is within the

court's discretion, a defendant's default does not automatically entitle a plaintiff to a

court-ordered judgment.  *Id.*  In exercising its discretion, the court considers seven factors

---

[3] Mr. Waters retained Mr. Luhrs to represent him on a contingency fee basis.  (Luhrs Decl. ¶ 7, Ex. 12.)  Mr. Waters seeks an award of attorney's fees pursuant to:  (1) RCW 49.48.030 and 49.52.070 for Mr. Luhrs work on the unpaid wages claim; and (2) *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404 (2009) for Mr. Luhrs work on the maintenance and cure claim.  (Mot. at 3, 6; Luhrs Decl. ¶¶ 8-11.)

ORDER - 3

1   (the "*Eitel* factors"):  (1) the possibility of prejudice to the plaintiff if relief is denied;

2   (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised

3   in the complaint; (4) the sum of money at stake in relationship to the defendant's

4   behavior; (5) the possibility of a dispute concerning material facts; (6) whether default

5   was due to excusable neglect; and (7) the preference for decisions on the merits when

6   reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

7         Generally, default judgment is a two-step process:  first, the court determines that

8   a default judgment should be entered; then, it determines the amount and character of the

9   relief that should be awarded.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

10  (9th Cir. 1987).  At the default judgment stage, well-pleaded factual allegations in the

11  complaint, except those related to damages, are considered admitted and are sufficient to

12  establish a defendant's liability.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.

13  1977); Fed. R. Civ. P. 8(b)(6); *TeleVideo*, 826 F.2d at 917-18.  The court must ensure that

14  the amount of damages is reasonable and demonstrated by the plaintiff's evidence.[4]  *See*

15  Fed. R. Civ. P. 55(b); *TeleVideo*, 826 F.2d at 917-18; *LG Elecs., Inc. v. Advance Creative*

16

17         [4] Additionally, this court's Local Rules require plaintiffs to support a motion for default judgment with:

18
19         a declaration and other evidence establishing [the] plaintiff's entitlement to a sum
           certain.  [The] [p]laintiff shall provide a concise explanation of how all amounts
           were calculated, and shall support this explanation with evidence establishing the
20         entitlement to and amount of the principal claim, and, if applicable, any liquidated
           damages, interest, attorney's fees, or other amounts sought.  If the claim is based
21         on a contract, [the] plaintiff shall provide the court with a copy of the contract and
           cite the relevant provisions.

22  Local Rules W.D. Wash. LCR 55(b)(2).

1   *Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002) ("[T]he evident policy of

2   [Rule 55(b)] is that even a defaulting party is entitled to have its opponent produce some

3   evidence to support an award of damages.").  And "[a] default judgment must not differ

4   in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P.

5   54(c).

6   **B.   Whether the *Eitel* Factors Favor Default Judgment**

7        As a threshold matter, the court notes that Mr. Waters fails to address or even

8   mention the *Eitel* factors in his motion for default judgment.  (*See generally* Mot.)  While

9   the court could deny his motion based on that failure,[5] it declines to do so and will

10  consider whether the *Eitel* factors favor default judgment.  The court begins with the

11  second and third *Eitel* factors and concludes that these two factors alone justify denying

12  Mr. Waters's motion for default judgment.

13       The second and third *Eitel* factors—the substantive merits of the plaintiff's claim

14  and the sufficiency of the plaintiff's complaint—are frequently analyzed together.

15  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).  For these

16  two factors to weigh in favor of default judgment, the complaint's allegations must be

17  sufficient to state a claim for relief.  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.

18  1978).  A complaint satisfies this standard when the claims "cross the line from the

19

20       [5] *See, e.g.*, *Osgood v. Main Street Mktg., LLC*, No. 16CV2415-GPC(BGS), 2017 WL
    7362743, at *2 (S.D. Cal. Sept. 27, 2017) ("First, the Court finds it appropriate to deny
21  Plaintiff's motion for default judgment for failing to address the *Eitel* factors."); *Hill v. First
    Integral Recovery, LLC*, No. CV-09-839-PHX-DGC, 2009 WL 2781990, at *1 (D. Ariz. Aug.
22  31, 2009) (denying motion for default judgment without prejudice because the plaintiff failed to
    address the *Eitel* factors).

conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007))); *In re Singh*, Bankruptcy No. 10-42050-D-7, 2013 WL 5934299, at *3 (Bankr. E.D. Cal. Nov. 4, 2013) (stating that "a complaint [that] is well-pleaded and sets forth plausible facts—not just parroted statutory or boilerplate language" supports granting default judgment). In evaluating the plaintiff's claims, the court "takes 'the well-pleaded factual allegations' in the complaint 'as true'"; however, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (first quoting *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (stating that "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default"); and then quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "As a result, where the allegations in a complaint are not 'well-pleaded,' liability is not established by virtue of the defendant's default and default judgment should not be entered." *See Adobe Sys., Inc. v. Tilley*, No. C09-1085 PJH, 2010 WL 309249, at *3 (N.D. Cal. Jan. 19, 2010).

Before turning to Mr. Waters's claims, the court notes that while Mr. Waters sets forth additional factual allegations relevant to his claims in his motion for default judgment and supporting declaration (*see, e.g.*, Waters Decl. ¶¶ 2-4), he cannot use such allegations "to supplement his complaint." *See Love v. Mustafa*, No.

20CV02071PJHAGT, 2021 WL 7286006, at *1 (N.D. Cal. Feb. 4, 2021), *report and recommendation adopted*, No. 20CV02071PJHAGT, 2021 WL 7287626 (N.D. Cal. Feb. 8, 2021) (citing *Danning*, 572 F.2d at 1388).  Accordingly, the court's analysis will only consider the allegations in Mr. Waters's complaint.

      1.  <u>Jones Act Negligence Claim</u>

      The Jones Act permits a "seaman injured in the course of employment" to recover damages against their employer.  46 U.S.C. § 30104.  To establish a cause for negligence under the Jones Act, a claimant must establish "duty, breach, notice and causation." *Ribitzki v. Canmar Reading & Bates, Ltd. P'ship*, 111 F.3d 658, 662 (9th Cir. 1997), *as amended on denial of reh'g and reh'g en banc* (June 5, 1997); *see also Ili v. Am. Seafoods Co., LLC*, 357 F. App'x 807, 808-09 (9th Cir. 2009).  "The employer of a seaman owes the seaman a duty under the Jones Act" to use reasonable care to ensure that the seaman has a "safe place to work."  *Ribitzki*, 111 F.3d at 662-63; *see also MacDonald v. Kahikolu, Ltd.*, No. CIV. 02-00084 LEK, 2007 WL 4547552, at *7 (D. Haw. Dec. 26, 2007), *aff'd*, 581 F.3d 970 (9th Cir. 2009).  "To recover on his Jones Act [negligence] claim, [the plaintiff] must establish that his employer . . . , or one of [their] agents, was negligent and that this negligence was a cause, however slight, of his injuries."  *Ribitzki*, 111 F.3d at 662 (quoting *Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir. 1993)).  "The 'quantum of evidence necessary to support a finding of Jones Act negligence is less than that required for common law negligence, . . . and even the slightest negligence is sufficient to sustain a finding of liability.'"  *Id.* (quoting *Havens*, 996 F.2d at 218).  Moreover, "[a]n employer is only liable under the Jones Act if the

1  employer or its agents either *knew or should have known* of the dangerous condition." *Id.*

2  at 663-64 (citing *Havens*, 996 F.2d at 218 ("[T]he employer must have notice and the

3  opportunity to correct an unsafe condition before liability will attach.  There must be

4  some evidence from which the trier of fact can infer that the [employer] either knew, or

5  in the exercise of due care, should have known of the unsafe condition." (citations

6  omitted))).

7       Mr. Waters alleges that the Mitchells, his employers, were negligent because they

8  failed to provide him with a safe place to work.  (*See* Compl. ¶ 5.)  However, the

9  Mitchells only owed him a duty to use reasonable care to ensure that he had a "safe place

10  to work" if he qualifies for seaman status.  *Ribitzki*, 111 F.3d at 662.  Although Mr.

11  Waters alleges that he was employed by the Mitchells as a seaman (*see* Compl. ¶¶ 2-3),

12  his complaint does not include any information regarding the job he was hired to perform

13  (*see generally id.*), and thus the court is unable to determine whether he qualifies for

14  seaman status.[6]  Moreover, Mr. Waters does not allege with any specificity how the

15  Mitchells or their agents failed to provide him a safe workplace.  (*See generally id.*

16  ¶¶ 4-10.)  In fact, Mr. Waters's complaint is devoid of any information regarding the

17  alleged unsafe condition aboard the Vessel that caused his injury or the manner in which

18

19    _____

20  [6] *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995) ("[T]he essential requirements
for seaman status are twofold.  First, . . . an employee's duties must contribut[e] to the function
of the vessel or to the accomplishment of its mission. . . . Second, . . . a seaman must have a

21  connection to a vessel in navigation (or to an identifiable group of such vessels) that is
substantial in terms of both duration and its nature." (quotation marks and citations omitted));
*see also Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 785 (9th Cir. 2007) ("The determination

22  of who is a seaman is a mixed question of fact and law.").

he was injured, aside from the fact that he was injured "while performing crew work" on the Vessel.  (*See generally id.*)

As to the notice element, Mr. Waters's complaint also lacks any allegations that would lead the court to infer that the Mitchells or their agents knew or should have known of the alleged unsafe condition.  (*See generally id.*)  Finally, as to causation, Mr. Waters merely alleges that the Mitchells's negligence caused his injuries.  (*See id.* ¶ 5.) As previously mentioned, however, Mr. Waters's complaint does not elaborate with any specificity as to how the Mitchells or their agents were allegedly negligent or how he was injured (*see generally id.* ¶¶ 4-10), and thus, the court is unable to determine if their negligence played a role in causing Mr. Waters's injuries.

In sum, this portion of Mr. Waters's complaint merely contains legal conclusions and "'naked assertion[s]' devoid of 'further factual enhancement'" and lacks sufficient well-pleaded factual allegations to state a claim for negligence under the Jones Act.  *See Iqbal*, 556 U.S. at 680; *DIRECTV*, 503 F.3d at 854; *Ribitzki*, 111 F.3d at 662.

2.  <u>Unseaworthiness Claim</u>

The admiralty doctrine of unseaworthiness is a form of strict liability that requires the owner of a vessel to ensure that a vessel and its appurtenant equipment and appliances are "reasonably fit for her intended service."  *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971).  To establish a claim for unseaworthiness, a plaintiff must establish:  (1) seaman status triggering the "warranty of seaworthiness"; (2) an injury caused by a "piece of the ship's equipment or an appurtenant appliance"; (3) "the equipment used was not reasonably fit for its intended use"; and (4) "the unseaworthy

1   condition proximately caused his injuries." *Ribitzki*, 111 F.3d at 664-65 ("Causation is

2   established by showing that the unseaworthy condition was a substantial factor in causing

3   the injury.").  A vessel's condition of unseaworthiness may arise from any number of

4   circumstances, including being inadequately or improperly manned, or the existence of a

5   defective condition, however temporary, on a physical part of the ship.  *See id.* at 664

6   (citing *Usner*, 400 U.S. at 499); *Am. President Lines, Ltd. v. Welch*, 377 F.2d 501, 504

7   (9th Cir. 1967).  However, an "isolated, personally negligent act," single and

8   unforeseeable, does not constitute unseaworthiness.  *See Adams v. Ugland Mgmt. Co.*,

9   515 F.2d 89, 90-91 (9th Cir. 1975) (distinguishing a single negligent act from an "unsafe

10  or improper method of work," including "ongoing procedures regularly practiced" in

11  unloading freight, and concluding that the crew member's negligence in unsnagging a

12  line was not an established practice to support an unseaworthiness claim); *Usner*, 400

13  U.S. at 499-500 ("To hold that this individual act of negligence rendered the ship

14  unseaworthy would be to subvert the fundamental distinction between unseaworthiness

15  and negligence . . . .").

16          First, Mr. Waters does not specifically allege that the Mitchells own(ed) the Vessel

17  during the relevant time period; instead, he alleges that they "owned and/or operated" the

18  Vessel.  (Compl. ¶ 3.)  If the Mitchells were not the owners of the Vessel when Mr.

19  Waters was injured aboard it, he cannot bring an unseaworthiness claim against them

20  absent a showing that the Mitchells were "the owner[s] *pro hac vice* under a demise

21  charter."  *See Wolsiffer v. Atlantis Submarines, Inc.*, 848 F. Supp. 1489, 1494 (D. Haw.

22  1994) ("The remedy of unseaworthiness for an injured seaman applies *in rem* against the

vessel and *in personam* against either the title owner of the vessel, or the owner *pro hac vice* under a demise charter." (citations omitted)). Second, Mr. Waters's complaint contains insufficient allegations to establish his seaman status, *see supra* Section III.B.1, and thus the court is unable to determine whether the warranty of seaworthiness extended to him.

Third, although Mr. Waters alleges that he was injured while performing crew work (Compl. ¶ 4), it remains unclear where and how he was injured. (*See generally id.* ¶¶ 4-10 (lacking allegations regarding the manner in which he was injured).) Fourth, even if Mr. Waters had alleged that his injuries were caused by a "piece of the ship's equipment or an appurtenant appliance," his complaint does not include any well-pleaded factual allegations demonstrating "that the equipment used was not reasonably fit for its intended use." (*See generally id.* ¶¶ 4-10); *Ribitzki*, 111 F.3d at 664-65. Finally, because Mr. Waters does not describe how the Vessel was allegedly unseaworthy or how he was injured, the court is unable to determine whether the Vessel's alleged unseaworthiness was a substantial factor in causing his injuries. (*See* Compl. ¶ 5 (making the conclusory allegation that the Vessel's unseaworthiness "directly and proximately caused" his injuries).)

Accordingly, the court concludes that Mr. Waters fails to state a claim for unseaworthiness because his complaint lacks "necessary facts" and the conclusory allegations and legal conclusions contained therein are insufficient to establish his claim. *See Iqbal*, 556 U.S. at 680; *Cripps*, 980 F.2d at 1267; *Ribitzki*, 111 F.3d at 664-65.

//

3.   <u>Maintenance, Cure, and Unearned Wages and Punitive Damage Claims</u>

Under the general maritime law, a seaman who falls ill or becomes injured "while in the service of a ship" is entitled to "maintenance and cure" by his employer. *Lipscomb v. Foss Mar. Co.*, 83 F.3d 1106, 1109 & n.1 (9th Cir. 1996) (citing *Gardiner v. Sea–Land Serv., Inc.*, 786 F.2d 943, 945-46 (9th Cir. 1986)).  "This right includes (1) 'maintenance'—a living allowance for food and lodging to the ill seaman; (2) 'cure'—reimbursement for medical expenses; and (3) 'unearned wages' from the onset of injury or illness until the end of the voyage." *Id.* (citing *Gardiner*, 786 F.2d 943 at 946) (stating that a seaman is entitled to the wages that he would have earned on the voyage "but for his illness or injury, to the extent such determination may be made without speculation"). The entitlement to maintenance and cure continues until the seaman reaches "maximum cure"—a recovery as complete as the injury allows. *Permanente S.S. Corp. v. Martinez*, 369 F.2d 297, 298-99 (9th Cir. 1966).  The obligation of maintenance and cure is not predicated on the fault or negligence of the employer. *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 730 (1943).  To be entitled to maintenance and cure, a seaman must show that:  "(1) they were employed as seaman; (2) their injuries or illnesses occurred, manifested, or were aggravated while in the ship's service; (3) the wages to which they are entitled; and (4) expenditures for medicines, medical treatment, board, and lodging." *Dean v. Fishing Co. of Alaska*, 300 P.3d 815, 821 (Wash. 2013); *West v. Midland Enter., Inc.*, 227 F.3d 613, 616 (6th Cir. 2000).

Again, Mr. Waters's complaint contains insufficient allegations to establish his seaman status, *see supra* Section III.B.1, and thus the court is unable to determine

1    whether he is entitled to maintenance, cure, and unearned wages under general maritime

2    law.  Additionally, while Mr. Waters alleges that he "was injured while working as a

3    crewmember in service of [the] [V]essel" (*see* Compl. ¶¶ 9-10), such a conclusory

4    allegation, unsupported by any well-pleaded facts regarding where, when, and how he

5    was injured, is insufficient to establish his eligibility for maintenance, cure, and unearned

6    wages.  Mr. Waters's complaint also lacks other relevant facts, including his

7    contractually agreed-upon wages and term of employment and whether he made

8    expenditures for "medicines, medical treatment, board, and lodging" after the injury.

9    (*See generally id.*); *Dean*, 300 P.3d at 821.  With respect to Mr. Waters's request for

10   punitive damages, his allegation that the Mitchells "were callous and willful in their

11   withholding of maintenance and cure and unearned wages" (Compl. ¶ 13) is conclusory

12   and therefore not well-pleaded.  Accordingly, it is not deemed admitted by the Mitchells

13   upon entry of default.  *See DIRECTV*, 503 F.3d at 854.  Absent any well-pleaded factual

14   allegations indicating callousness or willfulness, Mr. Waters is unable to establish that the

15   Mitchells are liable for punitive damages based on their alleged failure to pay him

16   maintenance, cure, and unearned wages.  *See, e.g.*, *Weller v. Fishing Co. of Alaska, Inc.*,

17   No. C18-1047JCC, 2019 WL 1200447, at *2 (W.D. Wash. Mar. 14, 2019) ("To recover

18   punitive damages for failure to pay maintenance and cure, Plaintiff would need to allege

19   facts that state a plausible claim that Defendants failed to provide maintenance and cure

20   until Plaintiff reached maximum medical recovery as a result of callous disregard, gross

21   negligence, or actual malice.").

22   //

1    Therefore, the court concludes that Mr. Waters fails to state claims for

2    maintenance, cure, and unearned wages and punitive damages for callous and willful

3    non-payment of maintenance and cure because his complaint merely offers "labels and

4    conclusions" and lacks "necessary facts" to establish his claims. *See Iqbal*, 556 U.S. at

5    680; *Cripps*, 980 F.2d at 1267; *Lipscomb*, 83 F.3d at 1109; *Weller*, 2019 WL 1200447, at

6    *2.

7         4.  Unpaid Wages and Double Wage Penalty Claims

8    In support of his unpaid wages claim, Mr. Waters alleges that he is owed wages

9    for crew work that he performed on the Vessel from June 17, 2018 to July 4, 2018.

10   (Compl. ¶ 11.)  However, to sufficiently establish his unpaid wages claim, Mr. Waters

11   must first allege the existence of an employment contract and the terms of such a

12   contract. *See, e.g.*, *Johnson v. Wang*, No. C16-1738JLR, 2018 WL 4347341, at *6 (W.D.

13   Wash. Sept. 12, 2018) (discussing, with respect to the plaintiff's unpaid wage claim,

14   whether the plaintiff had established the existence of an oral contract); *see also Johnson*

15   *v. Wang*, No. C16-1738JLR, 2017 WL 4957709, at *3 (W.D. Wash. Oct. 31, 2017)

16   (same).  Further, it is unclear, and Mr. Waters must clarify in his amended complaint,

17   whether he brings his unpaid wages claim under 46 U.S.C. § 11107, which "provides a

18   cause of action available to lay share fishermen against vessel owners [or operators]

19   when their contracts are contrary to law."[7] *See, e.g.*, *Johnson*, 2018 WL 4347341, at *6-7

20

21         [7] 46 U.S.C. § 11107 provides that:  "An engagement of a seaman contrary to a law of the
     United States is void.  A seaman so engaged . . . is entitled to recover the highest rate of wages at
22   the port from which the seaman was engaged or the amount agreed to be given the seaman at the
     time of engagement, whichever is higher."  46 U.S.C. § 10601 requires contracts between

1   (stating that because oral contracts between fishermen and vessel owners or operators are

2   void pursuant to 46 U.S.C. § 10601, the plaintiff's oral employment contract is void and

3   46 U.S.C. § 11107 entitles him "to either his promised wages or the prevailing market

4   wage, whichever is higher, for his work aboard the F/V Thor").

5           Moreover, Mr. Waters's conclusory allegation that "[t]he wages [the Mitchells]

6   failed to pay [him] for crew work performed . . . during the period from 6/17/18-7/4/18

7   were withheld willfully and intentionally" is insufficient to establish a claim for a double

8   wage penalty under RCW 49.52.070.[8]  (*See* Compl. ¶ 12); *see also Thompsons Film, LLC*

9   *v. Kappen*, No. 13-CV-0126-TOR, 2014 WL 4384029, at *3 (E.D. Wash. Sept. 3, 2014)

10  ("Plaintiff's complaint only alleges the most bare bones indication of willfulness,

11  unsupported with factual allegations indicating intent or knowledge of infringement.").

12  His complaint does not, for instance, allege that he ever asked the Mitchells to pay him

13  for his work abord the Vessel, nor does it allege any other facts that would lead the court

14  to infer that the Mitchells willfully and intentionally deprived him of his rightful wages.

15  (*See generally* Compl.)  Such facts may include examples of each instance that Mr.

16

17  working fishermen and those who own or operate the vessel to be in writing, and "specifically
    includes lay share fisherman by providing that "[t]he agreement shall . . . include the terms of
18  any wage, share, or other compensation arrangement particular to the fishery in which the vessel
    will be engaged."

19
    [8] RCW 49.52.070 provides that any employer who violates any provision of RCW
20  49.52.050(1) or (2) will be liable in a civil action by the aggrieved employee or his assignee to
    judgment for twice the amount of wages unlawfully rebated or withheld by way of exemplary
21  damages.  RCW 49.52.050(2) provides, in relevant part, that any employer or officer who
    "[w]ilfully and with intent to deprive the employee of any part of his or her wages, shall pay any
22  employee a lower wage than the wage such employer is obligated to pay such employee by any
    statute, ordinance, or contract" shall be guilty of a misdemeanor.  RCW 49.52.050(2).

1   Waters asked the Mitchells to pay him for his work abord the Vessel and their

2   response(s) to his request(s).  *See, e.g.*, *Johnson*, 2018 WL 4347341, at *5, 8 (awarding

3   double wages under RCW 49.52.070 after the maritime plaintiff established, among other

4   things, that he asked defendant to be paid for his work aboard the vessel pursuant to their

5   oral agreement, but the defendant refused and told plaintiff that he would be "dead before

6   [defendant] paid him a dime").

7          Accordingly, Mr. Waters fails to establish his unpaid wages and double wage

8   penalty claims because his complaint lacks necessary, well-pleaded facts and the

9   conclusory allegations contained therein are not deemed admitted upon entry of default.

10  *See DIRECTV*, 503 F.3d at 854; *Adobe*, 2010 WL 309249, at *3; RCW 49.52.070;

11  *Johnson*, 2018 WL 4347341, at *6-7.

12          5.  <u>Summary</u>

13          Because the allegations in Mr. Waters's complaint fail to sufficiently establish his

14  claims, the court need not address the remaining *Eitel* factors or the requested damages.

15  *See, e.g.*, *Dureau v. Allenbaugh*, 708 F. App'x 443, 444 (9th Cir. 2018) ("In her

16  complaint, Dureau's allegations of proximate causation were wholly conclusory.  Dureau

17  therefore failed to state a claim on which relief could be granted, necessitating the denial

18  of her motion for a default judgment."); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d

19  1388, 1392-93 (9th Cir. 1988) (reversing entry of default judgment on the plaintiff's

20  RICO claim where the complaint failed to state a claim for relief because the allegations

21  concerning certain elements of the claim were "entirely general").  Accordingly, the court

22  DENIES Mr. Waters's motion for default judgment without prejudice.

1    Although the court denies Mr. Waters's motion, it GRANTS Mr. Waters leave to

2  file an amended complaint that addresses the deficiencies identified above.  *See* Fed. R.

3  Civ. P. 15(a)(2) (requiring leave to amend to be "freely give[n] . . . when justice so

4  requires"); *J & J Sports Prods., Inc. v. Crawford*, No. 16-CV-01744-RS, 2016 WL

5  5942231, at *2 (N.D. Cal. Oct. 13, 2016) (denying motion for default judgment but

6  granting leave to amend the complaint); *Golden W. Veg, Inc. v. Bartley*, No. 16-CV-

7  03718-LHK, 2017 WL 386254, at *6 (N.D. Cal. Jan. 27, 2017) (same).  He shall file an

8  amended complaint, if any, within 21 days of the date of this order.  If Mr. Waters

9  amends the complaint, he may not move for default judgment on his amended complaint

10  unless and until the Mitchells fail to respond to a properly served amended complaint,

11  and he obtains an order of default on the amended complaint from the Clerk.  Fed. R.

12  Civ. P. 55(a)-(b); Local Rules W.D. Wash. LCR 55.  If Mr. Waters finds himself in a

13  position to move for default judgment on an amended complaint, he must take care to (1)

14  provide the court with an analysis of the *Eitel* factors and say why those factors support

15  an entry of default judgment in his favor; and (2) provide an "explanation of how all

16  amounts" allegedly owed by the Mitchells were calculated, as well as evidence

17  establishing his "entitlement to and amount of the principal claim, and, if applicable, any

18  liquidated damages, interest, attorney's fees, or other amounts sought," *see* Local Rules

19  W.D. Wash. LCR 55(b)(2).

20                        **IV.    CONCLUSION**

21    For the foregoing reasons, the court DENIES Mr. Waters's motion for default

22  judgment (Dkt. # 6) without prejudice and GRANTS Mr. Waters leave to file an amended

ORDER - 17

1   complaint.  If Mr. Waters chooses to file an amended complaint addressing the

2   deficiencies identified in this order, he shall do so within 21 days of the date of this order.

3   If, after proper service of the amended complaint, the Mitchells again default, Mr. Waters

4   may then file a renewed motion for entry of default, followed by a renewed motion for

5   default judgment.

6        Dated this 28th day of April, 2022.

7

8

9        JAMES L. ROBART
         United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22